**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cameron Sutcliffe, et al., | ) |
| Plaintiffs, | ) No. CV-13-01029-PHX-PGR |
| vs. | ) |
| Honeywell International, Inc., et al., | ) <u>ORDER</u> |
| Defendants. | ) |

Pending before the Court is Defendants Airbus Military, S.L.'s and EADS Construcciones Aeronauticas S.A.'s Motion to Dismiss the Second Amended Complaint for Lack of Personal Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(2) (Doc. 38). Having considered the parties' memoranda in light of the relevant record, the Court finds the motion should be granted pursuant to Fed.R.Civ.P. 12(b)(2) because the Court lacks personal jurisdiction over either Airbus Military, S.L. or EADS Construcciones Aeronáuticas S.A.[1]

---

[1]

Although the moving defendants, without the joinder of the plaintiffs, have requested oral argument, the Court concludes that oral argument would not significantly aid the decisional process.

The Court notes that it has intentionally not discussed every argument raised by the parties and that those arguments not discussed were considered by

Background

This action arises from the crash of a CASA C212-CC40, a twin engine aircraft ("the Aircraft"), in Saskatoon, Saskatchewan, Canada on April 1, 2011.  On the day of the crash, the Aircraft, owned by non-party Fugro Aviation Canada Ltd., was being used to conduct an aerial geophysical survey near Saskatoon.  On board the Aircraft were two pilots, Cameron Sutcliffe and Brock Gorrell, and an equipment operator, Iaroslav Gorokhovski.  Approximately three hours into the flight, the Aircraft's right engine failed and the pilots attempted to return to the Saskatoon airport but could not do so because the Aircraft's left engine failed about fourteen minutes later while the Aircraft was on its final approach to the airport and the Aircraft ended up crashing into a noise abatement wall next to a street in Saskatoon.  Both pilots were injured in the crash, and Gorokhovski was killed.  The Second Amended Complaint ("SAC"), filed by plaintiffs Sutcliffe and Gorell and Galina Gorokhovskaia, in her personal capacity and on behalf of Gorokhovski's beneficiaries, alleges a separate claim of negligence against each of three groups of defendants: Honeywell International, Inc., alleged to be the successor to Garrett, the company that designed, manufactured and distributed the Aircraft's TPE331 turboprop engines; EADS Construcciones Aeronáuticas, S.A. ("EADS CASA") and Airbus Military S.L. ("Airbus Military"), both alleged to be the manufacturer of the C212 aircraft, with Airbus Military alleged to be the successor to EADS CASA; and Shimadzu Corporation and Shimadzu Precision Instruments, Inc., alleged to be suppliers of components used in the Aircraft's

_____

the Court to be unnecessary to its resolution of the pending motion.

The Court further notes that it is exercising its discretion to resolve the personal jurisdiction issue prior to resolving the pending issue of whether it has subject matter jurisdiction over this action based on diversity of citizenship. *See* Ruhrgas AG v. Marathon Oil, 526 U.S. 574 (1999).

engines.[2]

More specifically, Count Three of the SAC alleges that EADS CASA and Airbus Military, without distinguishing between them, "failed to meet the duties [of care to pilots and passengers in CASA C-212 aircraft] required of them as the designer, manufacturer, type certificate holder, and distributor of the Aircraft" (¶ 49), and that their acts of negligence did or could include the following (¶ 50):

A.  Failing to conduct adequate test[ing] to ensure the Aircraft could be safely operated with one engine inoperative;
B.  Designing a fuel system which was incapable of supplying the collector tank with sufficient fuel when the Aircraft was flown banked in the operating engine;
C.  Failing to include screens on the ejector pumps;
D.  Specifying inspection techniques and intervals that were unable to detect foreign objects in ejector pumps and fuel tanks;
E.  Failing to have an effective system in place to identify and report engine failures caused by low fuel levels in collector tanks, including failures identified in service difficulty, incident and accident reports, warranty claims, and communications with engine and fuel pump manufacturers, operators, repair stations, pilots, mechanics, transportation safe[ty] boards, and military and civil aviation authorities;
F.  Failing to apply state of the art ergonomics and human factors principles in the design of the cockpit, including the annunciator panel;
G.  Designing the annunciator panel with lights grouped by system rather than engine;
H.  Specifying inadequate emergency procedures to engine failures;
I.  Failing to warn that single engine operations could lead to fuel starvation of the operating engine; and
J.  Failing to warn of the risks of debris injection by ejector pumps.

The SAC alleges that the named plaintiffs, Sutcliffe, Gorrell and Galina Gorokhovskaia, are all residents of Canada, as was decedent Gorokhovski, and that his beneficiaries are also residents of Canada with the exception of his parents who are alleged to be citizens of the United States residing in Georgia. None of the

---

2

Both Shimadzu defendants were previously dismissed from this action.

plaintiffs are alleged to have any connection with Arizona.  Defendant Honeywell is alleged to be an Arizona corporation with its principal place of business in Arizona, and defendants EADS CASA and Airbus Military are alleged to be Spanish corporations with their principal places of business in Madrid, Spain.

Personal Jurisdiction-Related Evidence[3]

The defendants have supported their motion with two declarations from Pedro Blanco, EADS CASA's head of legal affairs.[4]  The plaintiffs, whose SAC contains no personal jurisdiction allegations, have supported their opposition to the motion with the declaration of Jamie Thornback, a Canadian attorney associated with the plaintiffs who specializes in aviation accidents, and various website documents submitted by Thornback.

There is no dispute that both engines that were in the Aircraft at the time of the crash in April 2011 had been originally purchased by Construcciones Aeronáuticas SA ("CASA"), a predecessor to EADS CASA, from co-defendant Honeywell's predecessor in Arizona in 1980 (left engine) and 1981 (right engine). There is also no dispute that the crash-related engines were not the engines that had been originally installed on the Aircraft by CASA at the time of its manufacture in 1980; the

---

[3]

The plaintiffs contend at least twice in their response that the defendants' motion to dismiss, which has been brought pursuant to Rule 12(b)(2), must be treated as a motion for summary judgment pursuant to Fed.R.Civ.P. 12(d) because evidentiary matters outside of the pleadings have been presented to the Court.  This contention is baseless because Rule 12(d), by its very terms, mandates such a conversion only as to motions brought pursuant to Fed.Civ.P. 12(b)(6) and 12(c).

[4]

The Court notes that it has not relied on any disputed evidence set forth in Blanco's supplemental declaration filed with the defendants' reply brief.

- 4 -

right engine was installed in the Aircraft in January 2005 by a non-party and the left engine was installed in August 2010 by a non-party.

A. EADS CASA's evidence

According to the evidence submitted on behalf of EADS CASA by its declarant Blanco, CASA was renamed EADS CASA in 1999 when it became a subsidiary of the European Aeronautic Defense and Space Company ("EADS"); EADS CASA became a subsidiary of EADS N.V. in April 2009, which was renamed Airbus Group N.V. in June 2014.  EADS CASA designs, manufactures, assembles and sells certain aircraft, including the C-212 and its variants.  The Aircraft was delivered in 1981 to American Casa Distributor, Inc., a California company that is independent from EADS CASA, and thereafter EADS CASA did not determine or play any role in who purchased or used the Aircraft.  The Aircraft was extensively modified by its owner in 1989 and received a Canadian type limited certificate; EADS CASA was not involved in those modifications.

Blanco also declares that the C-212 aircraft and all of its variants were designed, manufactured, assembled, tested, distributed, and sold in Spain, and decisions about the issuance of warnings, operational procedures, and emergency procedures to customers and operators were and are made in Spain.  He also states that none of the specific acts of negligence alleged against EADS CASA in Count Three of the SAC were committed in Arizona by it or any corporate affiliate or predecessor.

Blanco further declares that EADS CASA has not made any direct sales to Arizona customers in the previous ten years, and that it and its predecessors make a limited number of purchases from Arizona companies. He also states that EADS CASA North America, which was previously owned as a subsidiary of EADS CASA,

- 5 -

had sales of approximately $47,881 to customers in Arizona between July 2008 and October 2011, and that EADS CASA North America is now a subsidiary of Airbus Group, Inc., which is a corporation wholly owned by Airbus Group, N.V.

Blanco also declares that in the past ten years EADS CASA has not maintained any offices, employees, or representatives, including sales personnel, in Arizona; that it has not had any subsidiaries or affiliates with offices, employees or agents in Arizona; that it has not advertised any aircraft, parts, equipment, or services in Arizona or to any customer whose principal place of business is in Arizona; that it has not owned any property or maintained any bank accounts in Arizona; that it has not sued or previously been sued in Arizona; and it has not been registered to do business in Arizona.

B. Airbus Military's evidence

According to the evidence submitted by declarant Blanco on behalf of Airbus Military, the company was founded in 2002 for the sole purpose of designing, manufacturing, assembling and selling a single aircraft, the A400M, and the company has never played any role in the design, manufacture, assembly, sale, or after-sale support of the CASA C-212-CC40 aircraft, its engines, or any of its components.

Blanco also declares that Airbus Military has never maintained any offices, employees, or representatives, including sales personnel, in Arizona; that it has never had any subsidiaries or affiliates with offices, employees or agents in Arizona; that it has never sold aircraft, parts, or equipment to, or provided any services to any customer in Arizona; that it has never advertised any aircraft or parts, equipment or services in Arizona or to any customer whose principal place of business is in Arizona; that it has never owned any property, maintained any bank accounts, or

paid any taxes in Arizona; that it has never sued or previously been sued in Arizona; and that it has never been registered to do business in Arizona.  Blanco further declares that Airbus Military has never had any offices, employees, property or representatives in the United States.

C. The plaintiffs' evidence

The plaintiffs, through its declarant Jamie Thornback, has submitted research information that Thornback obtained from several websites, including Airbus-related websites and Honeywell's website.  Thornback states in his declaration that he has investigated and litigated other accidents involving TPE331 engines, and that he conducted research regarding the Aircraft's crash and potentially responsible parties both before and after this action was filed.  Based on his research, Thornback states that 477 C212 aircraft were manufactured between 1971 and 2013, which means that Airbus Military/EADS CASA and their predecessors have purchased at least 954 TPE331-10 engines from Garrett/Honeywell; he also states that 13,000 TPE331 engines have shipped from Honeywell's Arizona facility since 1961, which means that Airbus Military/EADS CASA have purchased at least 7% of the TPE331 engines manufactured by Honeywell.  He further states that in 2009 the general procurement activities of Airbus, Airbus Military Astrium, EADS, EADS Defense & Security and Eurocopter were merged into a single department, the EADS General Procurement share service, which is hosted by Airbus; that Airbus has purchased materials from several Arizona companies, that Airbus contributed $165 million in Arizona in 2009, working with sixteen suppliers, and that Honeywell has a longstanding relationship with Airbus and has been a part of every aircraft Airbus has developed.

Discussion

EADS CASA and Airbus Military ("the defendants") have moved to dismiss the

negligence claim alleged against them pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction; they argue that the Court has neither general nor specific personal jurisdiction over them.  The burden of proof is on the plaintiffs to show that personal jurisdiction is appropriate, and they need to make that showing as to both of the defendants. <u>Walden v. Fiore</u>, 134 S.Ct. 1115, 1123 (2014).  Since the Court is only considering the parties' pleadings and their submitted written materials, the plaintiffs need only make a prima facie showing of jurisdictional facts to defeat the motion to dismiss, <u>Martinez v. Aero Caribbean</u>, 764 F.3d 1062, 1066 (9th Cir.2014), *i.e.*, they need only demonstrate facts that if true would support jurisdiction over the defendants. <u>Ballard v. Savage</u>, 65 F.3d 1495, 1498 (9th Cir.1995).

Where, as here, there is no applicable federal statute governing personal jurisdiction, the Court applies the law of the state in which it sits. <u>Martinez</u>, at 1066.  Arizona's long-arm statute provides that an Arizona court may exercise personal jurisdiction over a nonresident defendant to the maximum extent permitted under the Due Process Clause of the United States Constitution. Ariz.R.Civ.P. 4.2(a); <u>A. Uberti and C. v. Leonardo</u>, 892 P.2d 1354, 1358 (Ariz.1995).  The Constitution permits courts to exercise personal jurisdiction over nonresident defendants if there are at least "minimum contacts" with the forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The "'minimum contacts' inquiry principally protects the liberty of the nonresident defendant, not the interests of the plaintiff." <u>Walden v. Fiore</u>, 134 S.Ct. at 1125 n.9.

A. General Jurisdiction

The plaintiffs argue in part that the Court possesses general personal jurisdiction over the defendants.  General jurisdiction allows a defendant to be haled

- 8 -

1  into court in the forum state to answer for any of its activities anywhere in the world.

2  Martinez v. Aero Caribbean, 764 F.3d at 1066.  The Supreme Court has made it

3  clear that general jurisdiction "requires affiliations so continuous and systematic as

4  to render the foreign corporation essentially at home in the forum State, *i.e.*,

5  comparable to a domestic enterprise in that State." Daimler AG v. Bauman, 134

6  S.Ct. 746, 758 n.11 (2014) (internal quotation marks, brackets, and citation omitted).

7  This standard is a "demanding" one, Martinez, at 1070, and the paradigm fora for

8  general jurisdiction over a corporation are its place of incorporation and its principal

9  place of business, Daimler, at 760, and only in an "exceptional case" will general

10  jurisdiction be available anywhere else. *Id.* at 761 n.19; Martinez, at 1070.  It is

11  undisputed that Arizona is neither the place of incorporation nor the primary place

12  of business of either EADS CASA or Airbus Military.

13  The Court, reviewing the evidence of record in the light most favorable to the

14  plaintiffs, concludes that the plaintiffs have failed to establish a prima facie showing

15  of general jurisdiction over either EADS CASA or Airbus Military because their

16  factual showing is insufficient as a matter of law to render these defendants

17  "essentially at home" in Arizona.

18  The plaintiffs' argument that the "numerous contacts" between the defendants

19  and Arizona are sufficient to establish general jurisdiction is simply untenable.  First,

20  the plaintiffs' theory of general jurisdiction is not based solely on the Arizona-related

21  contacts of the defendants, but rather on the aggregate in-state activities of

22  unspecified Airbus-connected entities affiliated or related to them.   This single

23  enterprise contention, whether it be grounded in an agency or alter ego theory, and

24  it's not clear whether the plaintiffs are invoking one or both theories, is insufficient

25  to establish general personal jurisdiction.  As to the former, the Supreme Court

26

1  essentially rejected an agency theory of general jurisdiction in <u>Daimer</u>: "The Ninth

2  Circuit's agency theory appears to subject foreign corporations to general jurisdiction

3  whenever they have an in-state subsidiary or affiliate, an outcome that would sweep

4  even the sprawling view we rejected in <u>Goodyear</u> [<u>Dunlop Tires Operations, S.A. v.</u>

5  <u>Brown</u>, 131 S.Ct. 2846 (2011)]".  As to the latter, the plaintiffs have not made any

6  showing sufficient to establish that either defendant is the alter ego of some other

7  unspecified Airbus-related entity with Arizona contacts.   Under Arizona law,

8  corporate status is not to be lightly disregarded, <u>Chapman v. Field</u>, 602 P.2d 481,

9  483 (Ariz.1979), and alter ego status is not demonstrated absent proof of both (1)

10  unity of control and (2) that the observance of corporate form would sanction a fraud

11  or promote injustice. <u>Gatecliff v. Great Republic Life Ins. Co.</u>, 821 P.2d 725, 728

12  (Ariz.1991).  The Court agrees with the defendants that the isolated examples of

13  cooperation among Airbus-related entities that the plaintiffs identify from declarant

14  Thornback's internet research do not amount to any evidence of the injustice or

15  fraud requirement necessary to pierce the corporate veil.

16       Secondly, and more importantly, general personal jurisdiction would not exist

17  here even if all of the Arizona-based contacts by any Airbus-related entity mentioned

18  by the plaintiffs are attributed to the defendants.  For purposes of this motion, the

19  Court accepts that purchases of aerospace-related products from Arizona

20  companies by Airbus-related entities are systematic, continuous, and substantial.

21  But those procurement activities alone are insufficient because the proper inquiry is

22  not, as the plaintiffs seem to suggest, whether a defendant's contacts in the

23  aggregate in the forum state are extensive.  The Supreme Court has now made it

24  clear that since a corporation is normally at home for purposes of general personal

25  jurisdiction only at its place of incorporation and its principal place of business, an

26

1   argument that a foreign corporation is subject to general jurisdiction in any state in
2   which it conducts a systematic, continuous and substantial course of business is
3   "unacceptably grasping." <u>Daimler AG v. Bauman</u>, 134 S.Ct. at 761.  This is so
4   because the inquiry into general jurisdiction is not solely focused on the magnitude
5   of the foreign defendant's in-state contacts, but on "an appraisal of a corporation's
6   activities in their entirety, nationwide and worldwide.  A corporation that operates in
7   many places can scarcely be deemed at home in all of them. Otherwise, 'at home'
8   would be synonymous with 'doing business' tests framed before specific jurisdiction
9   evolved in the United States." *Id.* at 762.  *See also*, <u>Helicopteros Nacionales de</u>
10  <u>Colombia, S.A. v. Hall</u>, 466 U.S. 408, 418 (1984) ("[W]e hold that mere purchases
11  even if occurring at regular intervals, are not enough to warrant a State's assertion
12  of *in personam* jurisdiction over a nonresident corporation in a cause of action not
13  related to those purchase transactions.")

14      The plaintiffs have simply not made the requisite showing that this is an
15  exceptional case permitting general personal jurisdiction over defendants
16  incorporated and headquartered in Spain and the Court concludes that subjecting
17  the defendants to general jurisdiction in Arizona is incompatible with due process.
18  *See* <u>Helicopteros</u>, at 417-18 (Supreme Court concluded that a Colombian
19  corporation that owned a helicopter that crashed in Peru killing a U.S. citizen was not
20  subject to general personal jurisdiction in a wrongful death action brought in Texas.
21  In so deciding, the Supreme Court noted that the defendant had no place of
22  business in Texas and had never been licensed to do business there.  It further
23  noted that the defendant's contacts with Texas, which included that its CEO had
24  gone to Texas to negotiate a contract for transportation services with the plaintiffs'
25  employers, it had deposited checks drawn on a Texas bank, it had made significant
26

purchases from Bell Helicopter in Texas, and had sent its personnel to Texas for training at Bell's facilities there, were insufficient to satisfy due process requirements. *See also*, Martinez v. Aero Caribbean, 764 F.3d at 1070 (Ninth Circuit concluded that a foreign aircraft manufacturer sued for wrongful death in California over an airplane crash in Cuba was not subject to general personal jurisdiction in California. In so determining, the court noted that this was not an exceptional case permitting general personal jurisdiction because the defendant was organized and had its principal place of business in France, it had no offices, staff or other physical presence in California, it was not licensed to do business in California, and its California contacts were minor compared to its worldwide activities.  While the defendant did have numerous contacts with California, including that it had contracts worth between $225 and $450 million to sell airplanes to a California corporation, it had contracts with eleven California component suppliers, it had sent company representatives to California to attend industry conferences, promote its products, and meet with its suppliers, its aircraft were being used in California, and it had advertised in trade publications with distribution in California, these contacts were insufficient to make the defendant at home in California.)

B. Specific Jurisdiction

The plaintiffs also argue that the Court has specific jurisdiction over the defendants, basically because the engines that were on the Aircraft at the time of the crash were purchased by EADS CASA's corporate predecessor in Arizona.  The inquiry into whether a forum state may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation. Walden v. Fiore, 134 S.Ct. at 1121.  A three-part is used to determine whether a defendant has sufficient contacts with the forum state to be subjected to

1   specific personal jurisdiction: (1) the nonresident defendant must purposefully direct

2   his activities or consummate some transaction with the forum or a forum resident,

3   or perform some act by which he purposefully avails himself of the privilege of

4   conducting activities in the forum, thereby invoking the benefits and protections of

5   its laws; (2) the claim must be one which arises out of or relates to the nonresident

6   defendant's forum-related activities; and (3) the exercise of jurisdiction must comport

7   with fair play and substantial justice, *i.e.*, it must be reasonable. Picot v. Weston,

8   _ F.3d __, 2015 WL 1259528, at *3 (9th Cir. March 19, 2015).  All three factors must

9   exist for personal jurisdiction to apply. Omeluk v. Langsten Slip & Batbyggeri A/S,

10  52 F.3d 267, 270 (9th Cir.1995).  The plaintiffs have the burden of proving the first

11  two prongs, and if they do so, the burden shifts to the defendants to set forth a

12  compelling case that the exercise of jurisdiction would not be reasonable. Picot, at

13  *4.

14          (1) Purposeful Availment

15          The first prong of the test is analyzed under either a purposeful availment

16  standard or a purposeful direction standard, which are two distinct concepts.

17  Washington Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 672 (9th Cir. 2012).

18  While the Ninth Circuit generally applies a "purposeful direction" or "effects" test for

19  claims sounding in tort, *id.*, it has, at least in some cases, limited the use of that test

20  to claims involving intentional torts. *See* Holland America Line Inc. v. Wärtsilä North

21  America, Inc., 485 F.3d 450, 460 (9th Cir.2007) ("[I]t is well established that the

22  *Calder* [purposeful direction] test applies only to intentional torts, not to the breach

23  of contract and negligence claims[.]"); *accord*, Marlyn Nutraceuticals v. Improvita

24  Health Products, 663 F.Supp.2d 841, 850 (D.Ariz. 2009) (Court applied the

25  purposeful availment test to a negligent misrepresentation claim).  Since the sole

26

claim against the defendants is a negligence claim, a non-intentional tort, the Court

will apply the purposeful availment standard.[5]

This standard focuses on whether a nonresident defendant's conduct and

connection with the forum are such that it should reasonably anticipate being haled

into court there. World-Wide Volkswagen Corp. v, Woodson, 444 U.S. 286, 297

(1980).  It is based on the presumption that it is reasonable to require a defendant

to be subject to the burden of litigating in a state in which it conducts business and

benefits from its activities in that state. Brainerd v. Governors of the University of

Alberta, 873 F.2d 1257, 1259 (9th Cir.1989). This requirement is met if the contacts

proximately result from actions by the defendant itself that create a substantial

connection with the forum, such as where the defendant has deliberately engaged

in significant activities within the forum or has created continuing obligations

between itself and forum residents.  Burger King Corp. v. Rudzewicz, 471 U.S. 462,

474-76 (1985).  But the defendant may not be haled into a jurisdiction as a result of

the defendant's random, fortuitous, or attenuated contacts with the forum. Id. at 474.

The plaintiffs argue in part that EADS CASA purposely availed itself of the

rights and privileges of Arizona law via its purchase of the Aircraft's engines in

Arizona from Honeywell.[6]  The Court, viewing the evidence in a light most favorable

---

[5]

The Court notes that if the purposeful direction standard were to be applied here, the Court would conclude that no specific personal jurisdiction exists because the plaintiffs failed to meet their burden as to the first prong.  This is because one element of that standard is that the defendants caused harm that they knew would be likely to be suffered in the forum state, Washington Shoe Co., 704 F.3d at 673, and the plaintiffs, who have not alleged that they have any connection at all with Arizona, clearly have not alleged that they suffered any harm in Arizona.

[6]

Although the Court recognizes that the Arizona-related contacts at issue are those of EADS CASA or of its corporate predecessor CASA, the Court treats the

1   to the plaintiffs, concludes that the plaintiffs have met this prong because they have
2   sufficiently established that the defendants have deliberately engaged in commercial
3   activities within Arizona that cannot be said to be merely attenuated.

4        (2) Arising Out Of

5        In order for the defendants' purposeful activities in Arizona to support specific
6   jurisdiction, the plaintiffs' claims against them must arise out of those activities.  The
7   Ninth Circuit relies on a "but for" test to determine whether a particular claim arises
8   out of forum-related activities.  Ballard v. Savage, 65 F.3d at 1500.  The question
9   presented here is whether but for the defendants' contacts with Arizona would the
10  plaintiffs' claims against them have arisen.  *Id.*  The plaintiffs' contention is that "'but
11  for' EADS CASA's purchase of engines from Honeywell there would be no action
12  against EADS CASA in Arizona."

13       The Court is unpersuaded that this factor has been met because it concludes
14  that the "arising out of" issue cannot be reduced to the simplistic and sweeping
15  approach taken by the plaintiffs given the facts of record.  The causation element
16  requires a more direct relationship between the relevant forum contact, the mere
17  purchase of the engines, and the actual negligence claim brought against the
18  moving defendants in the SAC.  As the defendants correctly point out, the plaintiffs
19  do not allege that the purchase of the engines in Arizona constituted a negligent act
20  on the defendants' part, nor do they allege that any of the specific acts of negligence
21  raised against the defendants in ¶ 50 of Count Three of the SAC, *i.e.*, the design of
22  the C-212 aircraft's fuel system, the design of its cockpit and instrument panel, the
23  testing of the aircraft, the specification of inspection techniques for the aircraft, and

_____

25  defendants as being a single entity for purposes of the specific jurisdiction analysis
    given the plaintiffs' allegation and evidence that Airbus Military is the successor to
26  EADS CASA.

decisions about whether and what warnings to issue, occurred in Arizona.  While the design and/or manufacture of the engines themselves underlies the plaintiffs' negligence claim against Honeywell, and their negligence claim against the former Shimadzu defendants, it does not appear to directly underlie their negligence claim against the moving defendants.

(3) Reasonableness

But even if the first two prongs of the specific jurisdiction test are met, the assertion of personal jurisdiction against the defendants is unreasonable if it does not comport with fair play and substantial justice.  The Court must consider and balance seven factors in determining the reasonableness of its exercise of personal jurisdiction, none of which are dispositive in itself. Terracom v. Valley National Bank, 49 F.3d 555, 561 (9th Cir.1995).

The first reasonableness factor is the extent of the defendants' purposeful interjection into Arizona.  Notwithstanding the Court's conclusion that the plaintiffs have satisfied the purposeful availment prong, this factor tilts at least somewhat in the defendants' favor given that the defendants' relevant connections with Arizona are sparse. See Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1488 (9th Cir.1993) (Ninth Circuit noted that since the foreign defendants' contacts with the forum were attenuated, this first factor weighed in their favor, but that it did not weigh heavily in their favor given the court's assumption that those contacts were sufficient to meet the purposeful availment prong.)

The second factor is the burden on the defendants of defending this action in Arizona.  This factor favors the defendants because they are Spanish businesses headquartered in Spain with no physical presence in Arizona, and there is no evidence of record that any of the specific allegations of negligence against them

took place anywhere other than in Spain. "The Supreme Court has recognized that defending a lawsuit in a foreign country can impose a substantial burden on a nonresident alien. 'The unique burdens placed upon one who must defendant oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.'" Core-Vent, at 1488 (quoting Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 114 (1987)); see also, Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1125-26 (9th Cir.2002) (Ninth Circuit, in assessing this second factor, noted that the burden on the foreign defendant to defend a suit in California "appears great, given that it is incorporated in India, owns no property in the forum, and has no employees or persons authorized to act on its behalf there. Moreover, its potential witnesses and evidence are likely half a world away.")

The third factor is the extent to which the exercise of jurisdiction would conflict with the sovereignty of the defendants' state. This factor favors the defendants. The Ninth Circuit has recognized that where the nonresident defendant "is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction." Glencore Grain Rotterdam, at 1126.

The fourth factor is the forum state's interest in adjudicating the dispute. This factor weighs in the defendants' favor because Arizona's interest in this action, at least as to the negligence claim against these defendants, is at best very slight for the following reasons: none of the plaintiffs are Arizona residents and none of them were harmed in Arizona; while the Aircraft's engines were purchased from an Arizona company, those purchases occurred in 1980 and 1981, over 30 years prior to the crash of the Aircraft; the specific allegations of negligence raised against these defendants occurred outside of Arizona; the Aircraft was not built or sold in Arizona,

and there is no evidence that it was ever operated in Arizona. *See* Asahi Metal Industry Co., 480 U.S. at 114 ("Because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished.")

The fifth factor considers what forum is the most efficient judicial resolution of the controversy, which is evaluated by looking at where the witnesses and the evidence are likely to be located. Terracom v. Valley National Bank, 49 F.3d at 561. This is essentially a neutral factor here because witnesses and evidence will likely be located in Arizona, Canada, and Spain.

The sixth factor is the importance of the forum to the plaintiffs' interest in convenient and effective relief. Notwithstanding the plaintiffs' statement that they filed suit in Arizona for a variety of reasons, including their enhanced ability to obtain discovery in this forum, particularly against Honeywell, this factor is essentially insignificant in this case given that Arizona is neither the plaintiffs' place of residence nor the location of the crash. See Core-Vent Corp., 11 F.3d at 1490 (Ninth Circuit noted that "neither the Supreme Court nor our court has given much weight to inconvenience to the plaintiff" and that "a mere preference" on the plaintiff's part for its chosen forum does not affect the balancing.)

The seventh factor is the existence of an alternative forum. This factor weighs in the defendants' favor because the plaintiffs, who bear the burden of proving the unavailability of an alternative forum, *id.*, have not sufficiently established that they would be precluded from effectively litigating their negligence claim against these defendants in Canada or Spain.

In summary, the Court, having balanced all of the reasonableness-related factors, concludes that the moving defendants have presented a sufficiently compelling argument that the exercise of personal jurisdiction over them by this

- 18 -

1    Court would be improper because it would offend the traditional notions of fair play

2    and substantial justice.

3          C. Jurisdictional Discovery

4          The plaintiffs request that if the Court fails to summarily deny the defendants'

5    motion that they be afforded the opportunity to conduct formal jurisdictional

6    discovery related to the internal relationships among the various Airbus-related

7    entities and those entities' contacts with Arizona. They state that such discovery will

8    show, for example, that the defendants' purchases of Honeywell's products are

9    systematic, continuous, and substantial.

10         The Court agrees with the defendants that no such discovery is warranted

11   here because, based on the sufficiently developed record already presented by the

12   parties, the requested discovery would not reveal facts sufficient to constitute a basis

13   for either general or specific personal jurisdiction. *See* Pebble Beach Co. v. Caddy,

14   453 F.3d 1151, 1160 (9th Cir.2006) ("[W]here a plaintiff's claim of personal

15   jurisdiction appears to be both attenuated and based on bare allegations in the face

16   of specific denials made by the defendants, the Court need not permit even limited

17   discovery[.]"); Martinez v. Aero Caribbean, 764 F.3d at 1070 (Ninth Circuit concluded

18   that it is not an abuse of discretion to refuse to grant jurisdictional discovery when

19   it is clear that additional discovery would not demonstrate facts sufficient to

20   constitute a basis for personal jurisdiction.); Boschetto v. Hansing, 539 F.3d 1011,

21   1020 (9th Cir. 2008) (Ninth Circuit noted that the denial of jurisdictional discovery is

22   not an abuse of discretion when the plaintiffs' request is based only on their belief

23   that discovery will enable them to demonstrate sufficient forum business contacts to

24   establish the court's personal jurisdiction.)  Therefore,

25         IT IS ORDERED that Defendant Shimadzu Corporation's Motion to Amend

26

Caption (Doc. 40) is granted to the extent that the caption of this action is amended to reflect that the sole remaining named defendant is Honeywell International, Inc.

IT IS FURTHER ORDERED that Defendant Airbus Military, S.L.'s and EADS Construcciones Aeronauticas S.A.'s Motion to Dismiss the Second Amended Complaint for Lack of Personal Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(2) (Doc. 38) is granted to the extent that the Second Amended Complaint (Doc. 12) is dismissed as to defendants Airbus Military, S.L. and EADS Construcciones Aeronáuticas S.A. pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction.

DATED this 30th day of March, 2015.

Paul G. Rosenblatt
United States District Judge